**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LINDA M. CLARK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 1:13-CV-7430** |
| | ) | |
| **v.** | ) | **Hon. Judge Kendall** |
| | ) | |
| **ADVOCATE HEALTH and HOSPITALS** | ) | **Honorable Judge Brown** |
| **CORPORATION d/b/a ADVOCATE** | ) | |
| **MEDICAL GROUP,** | ) | <u>**JURY TRIAL DEMANDED**</u> |
| | ) | |
| **Defendant.** | ) | |

<u>**AMENDED COMPLAINT**</u>

NOW COMES, the Plaintiff, LINDA M. CLARK (hereinafter "Plaintiff" and/or "Clark"), by and through her undersigned Counsel, and upon knowledge and belief as to all allegations of which she so possesses and upon information and belief as to all other allegations, complains of the Defendant, **ADVOCATE HEALTH and HOSPITALS CORPORATION d/b/a ADVOCATE MEDICAL GROUP** (hereinafter referred to as "AHHC" and/or "Defendant") as follows:

<u>**NATURE OF THE CASE**</u>

1.     Plaintiff, Linda Clark, brings this action against Defendant, seeking damages for Defendant's egregious disability discrimination, failure to accommodate, harassment, unlawful termination, hostile work environment and related unlawful conduct constituting violations of the Americans with Disabilities Act of 1990, §2 *et. seq.*, 42 U.S.C.A. §12101, *et. seq.* ("ADA").

2.     This case is about Defendant Advocate Health's blatant, willful, and deliberate attempts to violate the law through its shocking disability discrimination and mistreatment of a disabled individual.

1

3.     Plaintiff is a qualified individual with a disability (Multiple Sclerosis "MS") that was unlawfully subjected to continuous, egregious, and shocking discrimination on the basis of her disability during her employment and unlawfully terminated from her employment because of her disability and/or in retaliation for her reporting of disability discrimination to other employees and her direct supervisors.

4.     Despite Plaintiff's dedicated employment and despite Plaintiff's repeated requests for accommodation and obvious need for accommodation, Defendant utterly failed to offer any reasonable accommodation and/or to engage in an "interactive process" to determine whether reasonable accommodation was possible.  In fact, Defendant refused to offer even simple accommodations, such as allowing her to receive training in the new electronic record keeping system, yet allowed similarly situated non-disabled employees to received said training. Defendant treated Plaintiff less favorably than non-disabled employees in the terms, conditions, responsibilities, and privileges of employment.

5.     Defendant unlawfully terminated Plaintiff for complaining/reporting disability discrimination and in retaliation for exercising her right to take legal action because Defendant failed to stop, remediate, correct, prevent mitigate and/or otherwise appropriately address the ongoing and continuous disability discrimination.

6.     Plaintiff has suffered extreme emotional distress, lost wages, and other significant damages as a direct and proximate result of Defendant's retaliatory treatment and termination of Complainant for reporting and opposing illegal disability discrimination.

## JURISDICTION AND VENUE

7.     The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332, 1343(3) and (4), 1658, 2201 and 2202. This is a suit authorized and instituted

2

pursuant to the Act of Congress known as the Americans with Disabilities Act of 1990, §2 *et. seq.*

8.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) and (c).  Defendant resides and does business in the Northern District of Illinois and the Plaintiff is a resident of the Northern District of Illinois.  Defendant is subjected to personal jurisdiction in the State of Illinois for the purposes of this lawsuit.  All or a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

**a.     Plaintiff**

9.     Plaintiff, Linda M. Clark, is a resident of the City of Chicago, the County of Cook, and the State of Illinois.

**b.     Defendant**

10.     Defendant, **ADVOCATE HEALTH and HOSPITALS CORPORATION d/b/a ADVOCATE MEDICAL GROUP,** is an Illinois Corporation doing business in the State of Illinois.  Defendant is an integrated health care system that provides the largest emergency and level I trauma network in Illinois.  Defendant is engaged in an industry affecting commerce and employs more than fifteen (15) employees and is an employer within the meaning of the ADA, 42 U.S.C.A. § 12202, 12111(5)(A).

## PROCEDURAL REQUIREMENTS

11.     Plaintiff fulfilled all conditions precedent to the institution of this action under the ADA.

12.     Plaintiff timely filed two (2) Charges of Discrimination in 2012, with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging violations of the American

with Disabilities Act of 1990 ("ADA"), 42 U.S.C § 12101 *et seq. See CODs attached hereto as Group Exhibit "A".*

13.     The EEOC issued a "Notice of Right to Sue" on Charges of Discrimination.  See *Right to Sue Letter attached here as Exhibit "B".*

14.     Plaintiff has timely filed this lawsuit within ninety (90) days of receiving her July 18, 2013, Notice of Right to Sue.

## COMMON ALLEGATIONS

15.     During all relevant times herein, Defendant was an employer as defined by the ADA. Plaintiff was an employee of Defendant from on or about June 1, 2001 through the date of her unlawful termination, April 12, 2012.

16.     During all relevant times herein, Plaintiff was an employee of Defendant as defined by the ADA.  Plaintiff was employed by Defendant in the position of Licensed Practical Nurse.

17.     At all relevant times herein, Plaintiff was competent to perform, and was performing all of the essential functions of her position as Licensed Practical Nurse in a manner that met and/or exceeded Defendant's legitimate business expectations.

18.     Plaintiff is a qualified individual with a disability/handicap under the ADA and IHRA. Plaintiff's serious medical conditions include but are not limited to Multiple Sclerosis ("MS"). Plaintiff was diagnosed with "MS" in or about 1988. Plaintiff's serious medical conditions substantially limit one or more major life activities. Plaintiff has a record of said medical conditions and disability.

19.     At all times, Plaintiff notified and kept Defendant informed of her medical conditions and needs for accommodations.

4

20.    Plaintiff serious medical conditions limit her ability to perform all of the essential functions of her job for Defendant. At all relevant times herein, Plaintiff was qualified, competent, and capable of performing all of the essential functions for her job with reasonable accommodations.

21.    From 1988 to 2010, Plaintiff did not have any MS flare ups. During that time, Plaintiff received several awards and recognition for her excellent performance, including "MVP" awards.

22.    In or about June 2010, Plaintiff's disability caused her to start having difficulty walking long distances. In or about December 2010, Plaintiff had medical treatment that showed that her disability was getting worse and she started experiencing more increased MS symptoms.

23.    In or about May 2011, Plaintiff required medical treatment and had to take medical leave due to her disability.

24.    In or about June 2011, Plaintiff advised Defendant that she was able to work and wanted to return to work. Plaintiff requested a reasonable accommodation by providing Defendant's manger and her direct manager, Debra Arpin, with a letter from her doctor requesting that Plaintiff's hours be reduced from 40 hours per week to 32 hours per week due to her disability and serious medical conditions.

25.    Defendant's manager and her direct manager, Debra Arpin, refused/denied Plaintiff's request for a reasonable accommodation. Instead, Arpin told Plaintiff that she would have to go on Short Term Disability ("STD").

26.    In or about June 2011, Plaintiff applied for and was approved for STD due to her disabilities and serious medical conditions. From in or about June 2011 to August/September 2011, Plaintiff was on STD.

5

27.     In or about August/September 2011, Defendant allowed Plaintiff to return to work from STD.

28.     While Plaintiff was on STD, Defendant changed its record system to a new electronic record keeping system. Plaintiff was told that there would be someone to train her in the new system on the first day that she returned to work. On Plaintiff's first day back she was refused/denied training in the new electronic record keeping system, that was provided to similarly situated non-disabled employees.

29.     Plaintiff was required to learn the new electronic record keeping system on her own, while working.

30.     Plaintiff repeatedly requested one-on-one training without interruption from her regular work, as similarly situated non-disabled employees were provided, but Defendant refused/failed to provide such.

31.     Due to being refused/denied training on the new electronic record keeping system, Plaintiff made mistakes. Defendant's manager, Arpin, disciplined and/or reprimanded Plaintiff for making mistakes in the new electronic record keeping system, despite continuing to refuse to provide Plaintiff with training in the new system.

32.     After disciplining and/or reprimanding Plaintiff, Defendant's manager, Arpin, started telling Plaintiff that she needed to call Human Resources and look online at Defendant's website to find a different position. After being disciplined and/or reprimanded, Plaintiff again requested training and suggested alternatives to formal training that may help, but Defendant's manager, Arpin, ignored her requests and/or suggestions.

33.     Defendant continued to hold Plaintiff to the same high standard of performance in regards to the new electronic record keeping system as similarly situated non-disabled employees

who had received training.

34.     Despite Plaintiff's complaint of disability discrimination and prior accommodations of time off, Defendant took no action to investigate, prevent, mitigate, remediate, stop, or otherwise address the discrimination and refusal to accommodate.

35.     Defendant failed and/or refused to engage in an "interactive process" to evaluate, consider, investigate, assess or otherwise attempt to determine if it could reasonably accommodate Plaintiff's disabilities, including but not limited to allowing him to take time off.

36.     There was no legitimate non-discriminatory/non-retaliatory basis for Defendant's discriminatory treatment of Plaintiff.

37.     In 2011 and 2012, Plaintiff repeatedly tried to find another position. Defendant even spoke with another nurse, Kelly who told Plaintiff she would love to switch positions with Plaintiff, but that Defendant would not allow her to. Kelly's position would have been easier for Plaintiff to do with her disability and would have provided her with the accommodations she had requested.

38.     Defendant was aware that the illegal and discriminatory actions described herein violated state and federal law. Defendant knowingly and intentionally violated state and federal law.

39.     As a direct and proximate result of Defendant's discrimination, retaliation and unlawful termination, in violation of the ADA, Plaintiff has suffered severe and egregious injury and damages.

40.     All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law.

## COUNT I

## DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA 42 U.S.C.A. § 12101, *et. seq.*

41.     Plaintiff re-alleges and restates all preceding paragraphs of this Amended Complaint as if fully set forth herein.

42.     All conditions precedent to Count I have been satisfied.

43.     Plaintiff is a qualified individual with a disability.

44.     The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it illegal to terminate a qualified individual with a disability because of her disability.

45.     Plaintiff is disabled in that she suffers from the following serious medical conditions: Multiple Sclerosis ("MS").

46.     Plaintiff was diagnosed with "MS" before she was employed by Defendant.

47.     Plaintiff has a record of her above-described disabilities.

48.     Defendant was aware of Plaintiff's disabilities.

49.     Defendant perceived Plaintiff as disabled.

50.     At all relevant times herein, Plaintiff could perform all of the essential functions of her job and job responsibilities/duties.

51.     At all relevant times herein, Plaintiff was qualified, competent, and able to perform all of her job responsibilities/duties.

52.     Plaintiff requested reasonable accommodations for her disability.

53.     Defendant refused to consider, evaluate, discuss, investigate, assess and/or otherwise attempt to engage in an interactive process to determine whether it could accommodate Plaintiff's disability and/or requests for accommodation.

54.     On April 12, 2012, Defendant terminated Plaintiff's employment, in whole, or in part because of her disabilities.

55.     At all relevant times herein, Plaintiff informed Defendant of the nature and scope of her disabilities.

56.     At all relevant times herein, Plaintiff was an excellent employee that was performing all of her job functions in an outstanding manner.

57.     Defendant's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

58.     Defendant engaged in the herein alleged willfully and malicious violations of the law knowingly and intending to violate federal law.

59.     Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

## COUNT II

### RETALIATION IN VIOLATION OF THE ADA
### 42 U.S.C.A. § 12101, *et. seq.*

60.     Plaintiff re-alleges and restates all preceding paragraphs of this Amended Complaint as if fully set forth herein.

61.     All conditions precedent to Count II have been satisfied.

62.     Plaintiff is a qualified individual with a disability.

9

63. The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it unlawful to terminate a qualified individual with a disability because of her disability.

64. Plaintiff is disabled in that she suffers from the following serious medical conditions: Multiple Sclerosis ("MS").

65. Plaintiff was diagnosed with "MS" before she was employed by Defendant.

66. Plaintiff has a record of her above-described disabilities.

67. Defendant was aware of Plaintiff's disabilities.

68. Defendant perceived Plaintiff as disabled.

69. At all relevant times herein, Plaintiff could perform all of the essential functions of her job and job responsibilities/duties.

70. At all relevant times herein, Plaintiff was qualified, competent, and able to perform all of her job responsibilities/duties.

71. At all relevant times herein, Plaintiff informed Defendant of the nature and scope of her disabilities.

72. On April 12, 2012, Defendant terminated Plaintiff's employment, in whole, or in part in retaliation for her requests for reasonable accommodation of her disabilities.

73. There was no legitimate non-discriminatory/non-retaliatory reason for any of the alleged discriminatory acts and/or retaliatory termination of Plaintiff.

74. At all relevant times herein, Plaintiff was an excellent employee that was performing all of her job functions in an outstanding manner.

10

75.     Defendant's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

76.     Defendant engaged in the herein alleged willfully and malicious violations of the law knowingly and intending to violate federal law.

77.     Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

## COUNT III

### HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADA 42 U.S.C.A. § 12101, *et. seq.*

78.     Plaintiff re-alleges and restates all preceding paragraphs of this Amended Complaint as if fully set forth herein.

79.     All conditions precedent to Count III have been satisfied.

80.     Plaintiff is a qualified individual with a disability.

81.     The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it illegal to terminate a qualified individual with a disability because of her disability.

82.     Plaintiff is disabled in that he suffers from the following serious medical conditions: Multiple Sclerosis ("MS").

83.     Plaintiff was diagnosed with "MS" before she was employed by Defendant.

84.     Plaintiff has a record of her above-described disabilities.

85.     Defendant was aware of Plaintiff's disabilities.

86.     Defendant perceived Plaintiff as disabled.

87.     At all relevant times herein, Plaintiff could perform all of the essential functions of her job and job responsibilities/duties.

88.     At all relevant times herein, Plaintiff was qualified, competent, and able to perform all of her job responsibilities/duties.

89.     At all relevant times herein, Plaintiff informed Defendant of the nature and scope of her disabilities.

90.     From the date that Defendant first became aware of Plaintiff's disability, it began to harass and humiliate Plaintiff.  The harassment and humiliation included, but was not limited to, the following:

> a.      Defendant's managers, supervisors and employees, including but not limited to Arpin, subjected Plaintiff to offensive, demeaning and humiliating comments regarding her disability, including but not limited to telling her "oh, you are too slow," "You are off-balance," you "need to learn to multi-task" (which complainant was previously told she was good at), and told that she needed to go on STD because of her mistakes;
>
> b.      Defendant's managers, supervisors and employees, including but not limited to Arpin, would demean and degrade Plaintiff about her limitations due to her disability, including but not limited to how slow she walked, and request to work only 32 hours;
>
> c.      Defendant's managers and supervisors, including but not limited to Arpin and Sandy Fudge, denied and/or refused to provide Plaintiff with training and/or opportunities that similarly situate non-disabled employees were provided;
>
> d.      Defendant's managers and supervisors, including but not limited to Arpin and Fudge, gave Plaintiff poor/worse evaluation scores due to her disability, but did not do the same to similarly situated non-disabled employees;

e.    Defendant's managers and supervisors, including but not limited to Arpin and Fudge, refused to allow Plaintiff to return to work, despite being cleared by her doctor to work, instead forcing/requiring her to apply for STD and/or medical/FMLA leave;

f.    Defendant's managers and supervisors, including but not limited to Arpin and Fudge, refused/failed to accommodate Plaintiff's reasonable request to work with a specialist and/or other physician who was not in as fast paced and/or busy practice, and/or reduced Plaintiff's hours from 40 hours per week to 32 hours per week;

g.    Defendant's managers and supervisors, including but not limited to Arpin and Fudge, subjected Plaintiff to harsher discipline and/or disciplined her for behaviors and/or actions that similarly situated non-disabled employees were not disciplined or disciplined as harshly for. For example, Defendant disciplined Plaintiff for mistakes on the new recording system despite not providing her full training and disciplined Plaintiff with two write-ups for one incident;

h.    Defendant's managers and supervisors, including but not limited to Arpin and Fudge, held Plaintiff to higher standards and expectations than similarly situated non-disabled employees:

    i.    Defendant's managers and supervisors, including but not limited to Debra Arpin and Sandy Fudge, subjected Plaintiff to more scrutiny, inquiry and nitpicking than similarly situated non-disabled employees, including but not limited to telling Plaintiff she was "not smiling enough" and that she was "not pleasant enough"; and

    ii.    Defendant's managers and supervisors, including but not limited to Debra Arpin and Sandy Fudge, subjected Plaintiff to different/worse terms, conditions and responsibilities of her employment than similarly situated non-disabled employees.

i.    On or about March 5, 2012, Plaintiff was called into a meeting with Sandy Fudge and Arpin. In that meeting Fudge and Arpin, told Plaintiff that she was not "meeting expectations" and that she would have to go on STD until she could find another position with Defendant. Defendant forced plaintiff onto STD, despite being cleared by her doctor to work;

j.    On or about March 27, 2012, Plaintiff contacted Defendant's Human Resources and advised them that she could return to work. Plaintiff's doctors told Defendant's Human Resources that there was no reason for Plaintiff to be on STD and not working;

k.     On or about April 3, 2012, Defendant's Human Resources contacted Plaintiff and told her to call Arpin to get her work schedule. When Plaintiff contacted Arpin, Arpin told Plaintiff that she still needed to talk with Fudge before putting Plaintiff back on the schedule. Defendant's manager, Arpin, subsequently advised Plaintiff to return to work on April 5, 2012;

l.     On or about April 4, 2012, Defendant's manager, Arpin, contacted Plaintiff and told Plaintiff that she had not received the paperwork necessary for Plaintiff to return to work so she would be paid for April 5, 2012 and April 6, 2012, but would not start working until Monday, April 9, 2012 at 8:30 a.m.;

m.     On or about April 5, 2012, Plaintiff spoke with Defendant's Human Resources, Cheryl Phillips, who told Plaintiff she was released to restart work and should have been back to work on April 5, 2012. Phillips told Plaintiff to contact Debra Arpin regarding the paperwork and why she was not supposed to start back at work until April 9, 2012;

n.     On or about April 6, 2012, Defendant's managers, Arpin and Fudge contacted Plaintiff and told her that they were still waiting for Plaintiff to be cleared to return to work, that she would be paid for this time off and would start on April 12, 2012 at 8:30 a.m.;

o.     On or about April 11, 2012, Defendant's managers, Aprin and Fudge, contacted Plaintiff and told her to meet them at the Hightech department, not at the office, at 8:30 a.m. When Plaintiff went into to meet with Aprin and Fudge, she was told that she was being terminated;

p.     On or about April 12, 2012, Defendant terminated Plaintiff; and

q.     Upon termination and belief, Defendant has replaced Plaintiff with a non-disabled individual.

91.     At all relevant times herein, Plaintiff was an excellent employee that was performing all of her job functions in an outstanding manner.

92.     Defendant's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

93.     Defendant engaged in the herein alleged willfully and malicious violations of the law knowingly and intending to violate federal law.

14

94. Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a. Damages sufficient to compensate Plaintiff for her injuries;

b. Reinstatement or Front Pay;

c. Back Pay, inclusive of lost wages and any benefits;

d. Pre-judgment and post-judgment interest;

e. Reasonable attorney's fees;

f. Costs of this action;

g. Emotional Distress Damages;

h. Punitive damages; and

i. Any and all other relief that this Honorable Court may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Amended Complaint.

Dated: December 3, 2013                    Respectfully submitted,

                                           **LINDA M. CLARK**

                                           **FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC**

                                           By: /s/Peter L. Currie
                                           *One of Plaintiff's Attorneys*

Robert M. Foote, Esq. (#03124325)
Kathleen C. Chavez, Esq. (#06255735)
Matthew J. Herman, Esq. (#06237297)
Peter L. Currie, Esq. (#06281711)
Omar A. Salguero, Esq. (#06311354)
Foote, Mielke, Chavez & O'Neil, LLC
10 West State Street
Suite 200
Geneva, Illinois 60134
Tel. No.: (630) 232-7450
Fax No.: (630) 232-7452

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on December 3, 2013, I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record.

Jill A. Cheskes, Esq.
SMITH AMUNDSEN, LLC
150 North Michigan Avenue
Suite 3300
Chicago, IL 60601
jcheskes@salawus.com

                            /s/Peter L. Currie